# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**PATRICK SHAW,**
**Claimant Below, Petitioner**

**FILED**

July 31, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0556** (BOR Appeal No. 2053611)
(Claim No. 2018002692)

**AVALOTIS CORPORATION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Patrick Shaw, by Counsel J. Robert Weaver, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Avalotis Corporation, by Counsel Robert J. D'Anniballe Jr., filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on July 18, 2017. The Office of Judges affirmed the decision in its October 31, 2018, Order. The Order was affirmed by the Board of Review on May 17, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Shaw, a painter, alleges that he was injured when he was exposed to fumes at work. A November 16, 2016, treatment note from Marietta Memorial Hospital indicates Mr. Shaw was seen for excessive sweating and vomiting. He reported that he was working in a tank the day before, when the symptoms began. He stated that emergency workers performed a blood test, which revealed that his glucose was low. He was treated and his symptoms somewhat improved. It was noted that a complete blood count showed hemoconcentration elevation of carbon dioxide. He was transferred to Camden Clark Medical Center.

Mr. Shaw reported to Camden Clark Medical Center that he was working in an enclosed tank for the past two days and had experienced vertigo, tinnitus, and headaches. An MRI and MRA

1

of the brain were normal. A brain CT scan was compared to a prior May 10, 2009, scan and it was noted that there were no significant findings. A chest x-ray showed hypoventilatory changes and cardiac silhouette enlargement. A brain MRI was unremarkable. A carotid doppler showed no significant stenosis in either carotid artery. Mr. Shaw was diagnosed with possible heat stroke, hypertension, and anxiety. Mr. Shaw was seen by Michael Morehead, M.D., while he was in the hospital. Dr. Morehead noted that a stroke assessment was negative and that Mr. Shaw likely had peripheral labyrinthine disorder. He was discharged on November 18, 2016, with diagnoses of dizziness, hypertension, anxiety, and polycythemia.

A November 25, 2016, treatment note from Marietta Memorial Hospital indicates Mr. Shaw reported dizziness and the new onset of slurred speech. He stated that the symptoms began a week prior while he was at work. It was noted that at the time, he was wearing a full respirator. The assessment was likely Bell's palsy. Treatment notes from Camden Clark Hospital on November 28, 2016, indicate Mr. Shaw was seen for facial drooping. A CT scan of the brain showed no acute intracranial process. He was diagnosed with Bell's palsy.

Mr. Shaw was treated at Parkersburg Neuro Associates, Inc., on December 6, 2016. The notes indicate he was seen by Dr. Morehead who noted that Mr. Shaw no longer had vertigo. A week after the initial incident, Mr. Shaw stated that he awoke with facial paralysis on the left side. He was diagnosed with Bell's palsy. It was noted on examination that he had severe left peripheral facial paralysis. He was diagnosed with facial nerve palsy. On April 26, 2017, Dr. Morehead noted that Mr. Shaw developed left facial paralysis three weeks after the initial incident, which gradually improved. He then experienced right ear deafness. After steroid treatment, Mr. Shaw saw improvement in his hearing. Dr. Morehead diagnosed cranial neuropathies, likely autoimmune in nature. On August 8, 2017, Mr. Shaw reported drawing in his face with left eye blurriness. Dr. Morehead again diagnosed facial nerve palsy.

On March 28, 2017, Mr. Shaw sought treatment at ENT Allergy Associates and was diagnosed with right ear hearing loss. The following day, he was seen by Gregory Krause, M.D. Dr. Krause indicate Mr. Shaw was wearing a respirator while at work in November of 2016 when he developed sudden dizziness. He was diagnosed with asymmetrical hearing loss, Bell's palsy, dizziness, and giddiness. On April 11, 2017, Dr. Krause noted that Mr. Shaw was experiencing dizziness, spinning, and right ear tinnitus. He still had left fascial paralysis. The diagnoses remained the same.

Mr. Shaw returned to Dr. Morehead on April 26, 2017, and reported improvement in his hearing following steroid treatments. The diagnosis was multiple cranial neuropathies, likely autoimmune based. That same day, Mr. Shaw was also seen by Dr. Krause for increased spinning and dizziness but believed his hearing had improved. An MRI of the brain was performed on April 29, 2017, and showed no acute findings. Mr. Shaw was again treated by Dr. Morehead on August 8, 2017. The treatment note indicates Mr. Shaw was treated at Ohio State University several times, and there was still no known cause of his multiple cranial neuropathies.

The claims administrator rejected the claim on July 18, 2017. On October 31, 2018, the Office of Judges affirmed the claims administrator's decision. It found that Mr. Shaw initially

reported dizziness and vomiting after working in an enclosed environment. However, his symptoms and conditions then evolved for many months. Dr. Morehead stated that he could not ascertain the cause of the unusual symptoms. The Office of Judges also found that there is no indication in the record of what chemicals Mr. Shaw may have been exposed to or the effects they can have. The only medical report of record attributing his symptoms to his workplace is the Report of Injury, which was completed long before Mr. Shaw's symptoms expanded. Further, he was diagnosed with Bell's palsy. The Office of Judges concluded that while Mr. Shaw's symptoms began at work, he has failed to show that they were the result of his work. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its decision on May 17, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Though Mr. Shaw's symptoms began at work, there is no evidence in the record that they were a result of his employment. The substance or substances that Mr. Shaw may have been exposed to are not identified. Therefore, a causal connection cannot be made.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 31, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

3